IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD C. GOINS,
     Plaintiff,

vs.                                    Case No. 3:10cv551/LAC/EMT

WALTER A. McNEIL, et al.,
     Defendants.
_____/

## ORDER

     This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted.

     Upon review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under § 1983 as to one or more of the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in an amended complaint. Also, in light of the substantive deficiencies in Plaintiff's claims, Plaintiff's Motion to Supplement the Record (Doc. 16) and Emergency Motion for Preliminary Injunction (Doc. 17) will be denied.

     Plaintiff is currently housed incarcerated at Santa Rosa Correctional Institution ("SRCI") (Doc. 1 at 2). He was incarcerated at the Orange County Jail ("Jail") and SRCI at the time of the events giving rise to the complaint (*id.* at 6–7). Plaintiff names ten Defendants in this action: Walter A. McNeil, Secretary of the Florida Department of Corrections ("FDOC"); Micheal Tidwell, Chief Administrator at the Jail; M. Mitchell, a member of the medical staff at the Jail; R. Tifft, Warden at SRCI; J. Haas, Assistant Warden at SRCI; R. Burch, Classification Supervisor at SRCI; W.D. Rummel, Medical Director/Chief Health Officer at SRCI; I. Nieves, an Advanced Registered Nurse Practitioner ("ARNP") at SRCI; the Chief of Security at SRCI; and L.D. Brock, Property Room Sergeant at SRCI (*id.* at 1–4).

Plaintiff alleges that on July 20, 2010, while he was being transported from FDOC custody to the Orange County Jail, he broke his left foot (Doc. 1 at 11). Upon his arrival at the Jail, he informed "the security and medical staff" of his injury (*id.*). Approximately 7–10 days later, he received three x-rays (*id.*). Defendant Mitchell, who Plaintiff states is either a Registered Nurse or an ARNP, reviewed the x-rays and advised Plaintiff that his foot was not broken, but he had a severe bunion under his left foot behind his left big toe (*id.* at 11–12). Plaintiff states that when Ms. Mitchell showed him the x-rays, he could clearly see that the bone behind his big toe on his left foot was broken (*id.* at 11). Defendant Mitchell prescribed an ankle brace and a pain reliever (*id.* at 12). Plaintiff filed a formal grievance with Defendant Tidwell, the Jail Administrator, on August 18, 2010, complaining that he did not receive proper medical treatment for his foot and was charged $30.00 for medical services and prescriptions (*see* Doc. 1, Ex. A), but he did not receive a response (Doc. 1 at 12).

On August 30, 2010, Plaintiff was transferred to the FDOC's Reception and Medical Center (Doc. 1 at 12). Plaintiff was examined by Dr. Smith (not a named Defendant), who ordered x-rays and issued a medical pass for no prolonged standing or walking, and no heavy lifting (*id.*).

On September 21, 2010, Plaintiff was transferred to SRCI (Doc. 1 at 13). A senior nurse conducted a "medical orientation" with incoming inmates (*id.*). Plaintiff advised her that his left foot was broken, and she made a notation in his medical records (*id.*). The senior nurse informed all of the incoming inmates that their existing medical passes would not be honored, and their medical needs would be re-evaluated by a doctor within ten days (*id.*).

Seven days later, on September 28, 2010, Plaintiff filed an informal grievance complaining that he had not received appropriate medical treatment for his foot and was suffering stiffness and "hot and cold sensations" in his foot (Doc. 1 at 13, Ex. B-1). On October 4, 2010, Plaintiff was seen by Defendant Nieves, an ARNP (Doc. 1 at 12). Plaintiff informed her that his foot was broken (*id.*). Nieves issued Plaintiff a medical pass for a bottom bunk and instructed Plaintiff to sign up for sick call if he wished to consult with a doctor (*id.*). On October 5, 2010, the Health Services Administrator, D.W. Griffiths, denied Plaintiff's informal grievance and advised him to address his medical issue at sick call (at which he would be assessed a $5.00 co-pay) (Doc. 1 at 14, Ex. B-1). Plaintiff appealed the response to the Warden's Office (*id.*). Defendant Dr. Rummel, the Chief

Health Officer, and Defendant Haas, the Assistant Warden, denied the grievance on the ground that FDOC policy provided that each inmate who initiates a non-emergency visit to a health care provider would be assessed a co-payment (*id.*). Plaintiff appealed the denial to Secretary McNeil's office on October 25, 2010, but as of the date of filing the instant complaint (December 28, 2010), he had not received a response (Doc. 1 at 14). Plaintiff states the alleged broken bone has healed improperly, causing him to walk "somewhat irregular at times" and restricting certain forms of exercise (*id.* at 16). He also states he suffers constant pain and discomfort (*id.*).

In an unrelated claim, Plaintiff alleges he has suffered acts of retaliation since he filed the informal grievance on September 28, 2010 (Doc. 1 at 13). He states his telephone access to a Ms. Hugger was restricted in December of 2010, even though it had been approved in November (*id.* at 13, 19). He additionally states his outgoing and incoming mail was censored, tampered with, and destroyed (*id.*). Also, on December 14 and 15, an officer threatened him for writing grievances against staff (*id.* at 14). Plaintiff additionally states Defendant Brock confiscated and destroyed his UCC (Uniform Commercial Code) materials valued at over $8,000.00 (*id.* at 13–14, 19). Plaintiff states the Chief of Security and Defendants Burch and Tifft denied his grievances concerning the destruction of his UCC materials (*id.* at 19).

Plaintiff claims that Defendants Tidwell, Mitchell, McNeil, Tifft, Haas, Griffiths (Plaintiff apparently intended to name him as a Defendant (*see* Doc. 16)), Rummel, and Nieves deprived him of adequate medical treatment for his foot, in violation of the Eighth Amendment (*id.* at 15). He additionally contends the FDOC policy of canceling inmates' medical passes from other institutions and assessing a co-payment for non-emergency sick call visits constitutes deliberate indifference (*id.*). Plaintiff claims that Defendants Tifft, Haas, Griffith, Brock, and the Chief of Security retaliated against him for filing grievances by restricting his telephone access to Ms. Hugger, interfering with his mail, and destroying his UCC materials without compensating him (*id.* at 18–19).

As relief, Plaintiff seeks nominal, compensatory, and punitive damages (Doc. 1 at 22). He also seeks injunctive relief (*id.*).

Initially, Plaintiff has failed to state a basis for liability as to Defendants Tidwell, McNeil, Tifft, Haas, Burch, Rummel, and the Chief of Security. Supervisory officials are not liable under

section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff alleges Defendants Tidwell, McNeil, Tifft, Haas, Burch, Rummel, and the Chief of Security denied his grievances. As discussed *supra*, this fact alone does not provide a basis for liability. Therefore, Plaintiff should drop these Defendants unless additional facts exist and are alleged to support claims against them.

Additionally, Plaintiff has failed to state a claim as to Defendant Mitchell (either an ARNP or an RN) and ARNP Nieves regarding their alleged deprivation of adequate medical treatment. It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious

deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009).

In the instant case, Plaintiff's disagreement with Ms. Mitchell, who Plaintiff admits is a medical professional, as to her diagnosis of his foot condition does not constitute deliberate indifference. Plaintiff admits Ms. Mitchell examined his x-rays, diagnosed the problem (albeit incorrectly, according to Plaintiff), and provided treatment in the form of medical passes and pain medication. Furthermore, even if Ms. Mitchell misdiagnosed Plaintiff's condition, the facts do not

suggest her allegedly erroneous diagnosis was deliberate. As to Defendant Nieves, her issuing Plaintiff a medical pass for a bottom bunk and instructing him to sign up for sick call (for which he would be assessed a $5.00 co-payment) was a reasonable response to Plaintiff's complaint and, therefore, does not suggest deliberate indifference.

Additionally, the FDOC policy of initially cancelling medical passes issued by medical providers outside the institution and requiring new inmates to have their medical needs re-evaluated by medical staff at their new institution does not violate the Eighth Amendment. Also, Plaintiff has failed to allege facts showing that the policy of assessing a $5.00 co-payment for non-emergency medical visits results in deliberate indifference to inmates' serious medical needs. Plaintiff does not suggest he was denied access to medical care unless he actually paid the co-pay, as opposed to the co-pay simply being assessed against his inmate account.

Additionally, Plaintiff has failed to state a claim as to Defendant Brock regarding the confiscation and destruction of his UCC materials. It is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become due process violations when there exist adequate remedies under state law for Plaintiff to seek redress for the deprivation. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44, 101 S. Ct. 1908, 1917, 68 L. Ed. 2d 420 (1984), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (overruling Parratt to the extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment); Rodriguez-Mora v. Baker, 792 F.2d 1524, 1527 (11th Cir. 1986).

In the instant case, the DOC provides an inmate grievance procedure for contesting mishandled inmate property. In fact, Plaintiff alleges that he utilized this procedure by filing grievances with the institution and with the Secretary of the DOC regarding the alleged loss of his property (UCC materials). Furthermore, Florida Statutes section 768.28 (1993) provides a tort remedy for the alleged deprivation of Plaintiff's property; thus, he cannot maintain a section 1983 action based on the alleged deprivation. Under no set of facts can Plaintiff establish that these avenues for relief are constitutionally insufficient. Moreover, Plaintiff has not alleged that he is

without an adequate post-deprivation remedy for Defendant Brock's alleged unconstitutional taking of his UCC materials. Therefore, Plaintiff cannot state an actionable claim.

Finally, Plaintiff has failed to state a claim of retaliation as to any Defendant. It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *See* Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592–93, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006). To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See* Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); Cummings v. Harrison, 695 F. Supp. 2d 1263, 1274–75 (N.D. Fla. 2010). A prisoner's filing of a grievance concerning the conditions of his imprisonment is protected speech under the First Amendment. *See* Douglas, 535 F.3d at 1321 (quoting Boxer X, 437 F.3d at 1112). As to the second element, the Eleventh Circuit employs a purely objective standard: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1253. In adopting this objective standard, the Eleventh Circuit expressly rejected a subjective "actual chill" standard, that is, a plaintiff suffers adverse action only if the retaliatory conduct actually chilled the exercise of his First Amendment rights. *Id.* at 1250–54. The third element, whether there was a causal connection between the retaliatory acts and the adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).

The Supreme Court decisions of Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977) and Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) guide analysis of a First Amendment retaliation claim. *See* Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 64 L. Ed. 2d 441 (2006) (citing Mt. Healthy, 429 U.S. at 287; Pickering, 391 U.S. at 566–67); Cummings, 695 F. Supp. 2d at 1274; Pate v. Peel, 256 F. Supp. 2d 1326, 1339 (N.D. Fla. 2003). Although the framework was established in the employment context, it is beneficial to maintain uniformity in these types of cases. Cummings, 695 F. Supp. 2d at 1274–75. The employment four-step analysis is reduced to a three-step analytical framework, but continues to provide a workable standard to guide all retaliation cases. *Id.* at 1275. Initially, the plaintiff must plead and provide sufficient evidence of the retaliatory motive and the adverse action. *See* Hartman, 547 U.S. at 259–60. "[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of . . . ." *Id.* at 260 (citing Mt. Healthy, 429 U.S. at 287). In the context of a defendant's motion for summary judgment, however, the plaintiff has the ultimate burden of proof; therefore, the defendant need only point to evidence as to the legitimate reason, and the plaintiff must produce "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El, 523 U.S. at 600 (citing Liberty Lobby, Inc., 477 U.S. at 256–57). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v. Conner, 115 S. Ct. 2293, 2299 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." Crawford-El, 523 U.S. at 598 (citation omitted); Harris v. Ostrout, 65 F.3d 912, 916–17 (11th Cir. 1995); *see also* Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism). To defeat a summary judgment motion, a plaintiff need not adduce clear and convincing evidence of improper motive, but

he must produce evidence from which a jury could find by a preponderance of the evidence, that retaliation was the but-for cause of the challenged action.  *See* <u>Crawford-El</u>, 523 U.S. at 590–95, 600.  "If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."  <u>Hartman</u>, 547 U.S. at 260 (citing <u>Mt. Healthy</u>, 429 U.S. at 287); *see also* <u>Crawford-El</u>, 523 U.S. at 593.  Indeed, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."  <u>Hartman</u>, *supra* (citing <u>Crawford-El</u>, 523 U.S. at 593; <u>Mt. Healthy</u>, 429 U.S. at 285–86).  However, "when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, . . . retaliation is subject to recovery as the but-for cause of official action offending the Constitution."  <u>Hartman</u>, 547 U.S. at 256 (citing <u>Crawford-El</u>, 523 U.S. at 593; <u>Mt. Healthy</u>, 429 U.S. at 283–84).

In the instant case, Plaintiff has failed to produce specific, nonconclusory factual allegations showing that the actions of Defendants were motivated by retaliation.  Therefore, he has failed to state a First Amendment claim of retaliation.

In amending his complaint, Plaintiff should carefully review the foregoing to determine whether he can state a claim for relief against Defendants.  If Plaintiff determines he does not wish to proceed with this case, he should file a notice of voluntary dismissal.  If Plaintiff determines he wishes to proceed with this action, he must file an amended complaint clarifying his allegations.  Plaintiff shall completely fill out a new civil rights complaint form, marking it "**Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates of the alleged illegal acts (Plaintiff is advised that he must properly complete Sections V, VI, and VII of the complaint form instead of referring the court to an attachment, as he did in his initial complaint (*see* Doc. 1 at 10)).  In the

section titled "Statement of Claims," Plaintiff must state what rights or statutes he contends have been violated, and he must provide reference to the facts supporting the claimed violations. Finally, in the "Relief Requested" section, Plaintiff shall identify the form of relief he seeks from this court. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself. He should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file a witness list or submit exhibits as evidentiary support for his complaint. The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment. Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so. Finally, Plaintiff is advised that discovery is premature at this stage of the case, and Plaintiff should not conduct any discovery without leave of court.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2.      Plaintiff shall have **THIRTY (30) DAYS** in which to file an amended civil rights complaint, which shall be typed or clearly written, submitted on court form, and marked "**Amended Complaint**." Alternatively, Plaintiff shall file a notice of voluntary dismissal within that time.

3.      Failure to submit an amended complaint as instructed will result in a recommendation of dismissal of this action.

4.      Plaintiff's Motion to Supplement the Record (Doc. 16) is **DENIED**. Plaintiff shall include all Defendants, factual allegations, claims, and requests for relief in his Amended Complaint.

5.      Plaintiff's Emergency Motion for Preliminary Injunction (Doc. 17) is **DENIED** without prejudice, in light of the substantive deficiencies of his claims identified in this order.

**DONE AND ORDERED** this 16th day of March 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**