IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD C. GOINS,
  Plaintiff,

vs.              Case No. 3:10cv551/LAC/EMT

WALTER A. McNEIL, et al.,
  Defendants.
_____/

## REPORT AND RECOMMENDATION

  This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 25).  Leave to proceed in forma pauperis has been granted.

  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions.  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of this action is warranted.

I.  PLAINTIFF'S ALLEGATIONS

  Plaintiff is currently incarcerated at Santa Rosa Correctional Institution ("SRCI").  He was incarcerated at the Orange County Jail ("Jail") and SRCI at the time of the events giving rise to the complaint (doc. 25 at 7–10).  Plaintiff names eleven Defendants in this action:  Walter A. McNeil, Secretary of the Florida Department of Corrections ("FDOC"); Micheal Tidwell, Chief Administrator at the Jail; M. Mitchell, a member of the medical staff at the Jail; R. Tifft, Warden at SRCI; J. Haas, Assistant Warden at SRCI; R. Burch, Classification Supervisor at SRCI; D.W. Griffiths, Health Service Administrator at SRCI; W.D. Rummel, Medical Director/Chief Health Officer at SRCI; I. Nieves, an Advanced Registered Nurse Practitioner ("ARNP") at SRCI; the Chief of Security at SRCI; and L.D. Brock, Property Room Sergeant at SRCI (*id.* at 1–4).

Plaintiff alleges that on July 20, 2010, while he was being transported from FDOC custody to the Orange County Jail, he broke his left foot (doc. 25 at 7). Upon his arrival at the Jail, he informed "the security and medical staff" of his injury (*id.*). Approximately 7–10 days later, he received three x-rays (*id.*). Ms. Mitchell, who Plaintiff states is either a registered nurse or an ARNP, reviewed the x-rays and advised Plaintiff that his foot was not broken, but he had a severe bunion under his left foot behind his left big toe (*id.* at 7–8). Plaintiff states when Ms. Mitchell showed him the x-rays, he could clearly see that the bone behind his big toe on his left foot was broken, and calcium deposits had begun to develop in the area of the break (*id.* at 8). Ms. Mitchell prescribed an ankle brace and a pain reliever (*id.* at 8). Plaintiff filed a formal grievance with Chief Administrator Tidwell on August 18, 2010, complaining that he did not receive proper medical treatment for his foot, and that he was charged $30.00 for medical services and prescriptions (*id.*; *see also* doc. 1, Ex. A). Plaintiff was transferred to FDOC's Reception and Medical Center ("RMC") on August 30, 2010, before he received a response from Administrator Tidwell (doc. 25 at 8).

At RMC, Plaintiff was examined by Dr. Smith (not a named Defendant), who ordered x-rays and issued a medical pass for no prolonged standing or walking, and no heavy lifting (doc. 25 at 8).

On September 21, 2010, Plaintiff was transferred from RMC to SRCI (doc. 25 at 8). Nurse Williams (not a named Defendant) conducted a "medical orientation" with incoming inmates (*id.* at 9). Plaintiff advised her that his left foot was broken (*id.*). Nurse Williams documented Plaintiff's information and informed him he would be seen by a doctor (*id.*).

Seven days later, on September 28, 2010, Plaintiff filed an informal grievance complaining that he had broken his <u>right</u> foot but had not received appropriate medical treatment (doc. 25 at 9; *see also* doc. 1, Ex. B-1). He stated he was suffering stiffness in his left big toe and "hot and cold sensations" in his left foot (*id.*). On October 4, 2010, Plaintiff was seen by ARNP Nieves (doc. 25 at 9). Plaintiff informed her of his foot problem and the fact that he had Hepatitis C (*id.* at 9, 15). ARNP Nieves issued Plaintiff a medical pass for a bottom bunk and instructed Plaintiff to sign up for sick call if he wished to consult with a doctor regarding his foot (*see* doc. 1 at 13).

On October 5, 2010, Health Services Administrator Griffiths denied Plaintiff's informal grievance and advised him that he must address his medical issue at sick call, for which he would

be charged a $5.00 co-payment (doc. 25 at 9; *see also* doc. 1 at 14, Ex. B-1).  Plaintiff appealed the response to the Warden's Office, complaining that the medical staff was denying him medical treatment for his foot and "plac[ing] [him] in a position to be extorted" by requiring him to pay the $5.00 co-payment (*id.*).  Plaintiff requested medical treatment without having to pay the co-payment (*see* doc. 1, Ex. B-1).  Dr. Rummel and Assistant Warden Haas denied the grievance on the ground that FDOC policy provided that each inmate who initiates a non-emergency visit to a health care provider would be assessed a co-payment (*id.*).  Plaintiff appealed the denial to Secretary McNeil's office on October 25, 2010 (doc. 25 at 9).  Plaintiff alleges the appeal was denied on March 25, 2011 (after Plaintiff filed the instant complaint, on December 28, 2010), on the ground that Plaintiff's foot showed no signs of a break or fracture (*id.*).

Plaintiff states that on April 7, 2011, after he filed this lawsuit, he was seen by Dr. Rummel during a medical call-out initiated by Rummel to address Plaintiff's Hepatitis C (doc. 25 at 10).  Plaintiff states Dr. Rummel advised him that his Hepatitis C was worsening (*id.*).  Dr. Rummel also conducted a cursory examination of Plaintiff's left foot and advised him that it appeared  that his foot had been broken at some point in time (*id.*).  Plaintiff states he asked Dr. Rummel when he would receive treatment for both conditions (*id.*).  Dr. Rummel responded that he had done all he was going to do, and told Plaintiff he could leave (*id.*).  Plaintiff states he still has not received treatment for his foot or Hepatitis C (*id.*).

In an unrelated claim, Plaintiff alleges he has suffered acts of harassment and retaliation since he filed the informal grievance on September 28, 2010 (doc. 25 at 10).  He states he was placed on close management status under "false pretenses" (*id.* at 17).  He additionally states his outgoing and incoming mail was censored, tampered with, and destroyed (*id.* at 17–18).  He states $8,000.00 worth of UCC (Uniform Commercial Code) materials and other "legal" materials were destroyed and confiscated (*id.* at 18; *see also* doc. 1 at 13–14, 19, Ex. B-2).  His access to the law library was limited to only two (2) days per month (doc. 25 at 18).  His hemorrhoid medication was discontinued (*id.*).  Plaintiff additionally states "security personnel" made subtle, verbal threats regarding his grievances and complaints, and constantly moved him from one cell to another to frustrate him (*id.*).

Plaintiff states the lack of treatment for his foot has resulted in further injury to his left hip and constant pain in his hip and foot (doc. 25 at 12–13).

Plaintiff asserts three claims. First, he claims that Defendants Mitchell, Nieves, Griffiths, Rummel, Tidwell, Haas, Burch, Tifft, and McNeil deprived him of adequate medical treatment for his foot, in violation of the Eighth Amendment (doc. 25 at 12–13). Second, he claims that Defendants McNeil, Tifft, Haas, Burch, Rummel, Nieves, and Griffiths deprived him of adequate medical treatment for the Hepatitis C (*id.* at 14–16). Third, he claims that Defendants McNeil, Tifft, Haas, Burch, Griffiths, Brock, and the Chief of Security retaliated against him for filing grievances concerning the lack of medical treatment, in violation of the First Amendment (*id.* at 17–18). Plaintiff additionally states he is asserting state law claims, and he asks the court to exercise supplemental jurisdiction over those claims (*id.* at 11).

Plaintiff seeks declaratory relief and nominal, compensatory, and punitive damages (doc. 25 at 19–20). He also seeks an injunction requiring Defendants to: (1) cease all retaliation and return his "legal, informational, and UCC materials," (2) transfer him to Tomoka Correctional Institution,[1] and (3) provide him a thirty-day supply of all prescribed medications free of charge upon his release from the FDOC (*id.*).

II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule

---

[1] In October of 2010, Plaintiff filed a formal grievance requesting transfer to Sumpter Correctional Institution, because it was closer to his family and permanent place of residence (*see* doc. 17, Ex. A). Defendants Burch and Tifft denied the request (*id.*). Plaintiff appealed the denial to Secretary McNeil's office, but requested transfer to Tomoka, instead of Sumpter (*id.*). Secretary McNeil's office denied the appeal (*id.*).

Case No: 3:10cv551/LAC/EMT

of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

III. ANALYSIS

    A. Denial of Adequate Medical Treatment for Hepatitis C

Plaintiff's claim of denial of medical treatment for his Hepatitis C is subject to dismissal for failure to exhaust administrative remedies. As Plaintiff was previously advised on the complaint form itself, 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104–134, §§ 801–810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

Case No: 3:10cv551/LAC/EMT

confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has consistently enforced the PLRA's mandatory exhaustion requirement, holding that the requirement applies to all federal claims brought by any inmate. *See* Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 520, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Courts do not have discretion to waive the exhaustion requirement, even if it can be shown that the grievance process is futile or inadequate. Woodford, 548 U.S. at 85; Alexander v. Hawk, 159 F.3d 1321, 1325–26 (11th Cir. 1998). Nor may courts inquire as to whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524. In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Woodford, 548 U.S. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process prior to initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam ); *see also* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). The Supreme Court has made it clear, however, that the "failure to exhaust is an affirmative defense under the PLRA, and . . . [that] inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Nevertheless, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. *Id.* at 215–16; *see also* Clark v. Georgia Bd. of Pardons & Paroles, 915 F.2d 636, 640–41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies").

In the instant case, Plaintiff submitted copies of several administrative grievances to demonstrate he exhausted administrative remedies prior to filing suit (*see* doc. 1, attached exhibits; doc. 17, attached exhibits; doc. 25, attached exhibits). Specifically with regard to the Hepatitis C issue, Plaintiff sent a letter titled, "Formal Complaint," to the Florida Governor's Office, the Florida Attorney General's Office, and Secretary McNeil's office, complaining that he and several other inmates contracted Hepatitis C at Cross City Correctional Institution between 2004 and 2008 (doc. 25 at 24–28). Plaintiff stated he became aware of his diagnosis in 2009 (*id.*). He stated he had not received any medication or special diet for his condition (*id.*). He also stated correctional officers at Union Correction Institution retaliated against him for complaining about the Hepatitis C issue (*id.*). He requested an independent investigation by the Governor to determine the source of the outbreak (*id.*). He also sought disciplinary action against any staff who failed to take corrective measures (*id.*).

A representative of Secretary McNeil's office responded to Plaintiff's letter with a letter advising him to present his issue at the institutional level, and if he was not satisfied with the response, he could follow the grievance process in accordance with the administrative rules of the DOC, set forth in Title 33 of the Florida Administrative Code (doc. 25, Ex. A). Rule 33-103.007 provides that emergency grievances, grievances of reprisals, or grievances of a sensitive nature may be filed directly with the Office of the Secretary using the Request for Administrative Remedy or Appeal, Form DC1-303. Fla. Admin. Code r. 33-103.007(6)(a). The rule further provides that the inmate shall state at the beginning of Part A of Form DC1-303 that the grievance concerns either an emergency, or is a grievance of a reprisal, or a grievance of a sensitive nature. Fla. Admin. Code r. 33-103.007(6)(a)1. The rule provides that the inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility. Fla. Admin. Code r. 33-103.007(6)(a)2. The rule provides that upon receipt of the direct grievance and following review of the same, if it is determined that the grievance is not an emergency grievance, a grievance of reprisal, or a grievance of a sensitive nature, the grievance shall be returned to the inmate with the reasons for return specified, and advising the inmate to resubmit his or her grievance at the appropriate level. Fla. Admin. Code r. 33-103-007(6)(d).

The allegations in the complaint, taken as true, and the attachments submitted by Plaintiff demonstrate that he failed to comply with the FDOC's procedural rules governing the administrative grievance process.  He did not submit his complaint on Form DC1-303, nor did he state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution.  Additionally, he did not re-submit his grievance at the appropriate level upon the Secretary's office advising him to do so.  Therefore, his claim concerning medical treatment for his Hepatitis C should be dismissed without prejudice to his raising it in a new civil rights action initiated after he has exhausted his administrative remedies.

### B.   Denial of Adequate Medical Treatment for Foot

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners.  Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  Estelle, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds*

*by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105.  "Deliberate indifference has three components:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05.  However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009).

In the instant case, Plaintiff claims that Defendants Mitchell, Nieves, and Griffiths are not physicians, and their failure to schedule an examination by a doctor constituted deliberate

indifference (doc. 25 at 12). He claims that Defendant Rummel was deliberately indifferent by conducting only a cursory examination and failing to prescribe treatment in April of 2011 (eight months after the injury) (*id.* at 13). He claims that Defendants Tidwell, Haas, Burch, Tifft, and McNeil are liable for the conduct of their subordinates, because these supervisory Defendants have a custom of supporting the actions of their subordinates, and they intentionally failed to correct their subordinates' unconstitutional conduct (*id.* at 13). Plaintiff states he is aware of several other inmates who have suffered similar constitutional violations (*id.*).

Plaintiff's allegations fail to state a claim against Defendant Mitchell. Plaintiff admits Ms. Mitchell is a medical professional (a registered nurse or an ARNP), who examined Plaintiff's x-rays, diagnosed the problem (albeit incorrectly, according to Plaintiff), and provided treatment in the form of medical passes and pain medication. Even if Ms. Mitchell misdiagnosed Plaintiff's condition, the facts do not suggest her allegedly erroneous diagnosis was deliberate. As to ARNP Nieves, her issuing Plaintiff a medical pass for a bottom bunk and instructing him to sign up for sick call to see a doctor about his foot (for which he would be assessed a $5.00 co-payment) was a reasonable response to Plaintiff's complaint and, therefore, does not suggest an objectively serious deprivation. Likewise, as to Health Services Administrator Griffiths, his directing Plaintiff to address his medical issue through sick-call (the FDOC's process available to inmates who wish to see a health care provider) was a reasonable response to Plaintiff's complaint. As to Dr. Rummel, Plaintiff's allegation that Rummel stated in April of 2011 that it appeared Plaintiff's foot had been broken at some point in time but failed to offer treatment, fails to state an Eighth Amendment violation. Plaintiff admits that the purpose of his visit with Dr. Rummel, which was initiated by Rummel, was to determine the progression of Plaintiff's Hepatitis C. Rummel's refusal to address other medical issues at that time does not suggest deliberate indifference; rather, Plaintiff was attempting to circumvent the available process for seeking medical attention (that is, the sick-call process, for which he would be charged $5.00), by using the Hepatitis C appointment to address the foot issue. Plaintiff's allegations demonstrate that it was Plaintiff himself who delayed medical treatment for his foot simply because he did not want to be liable for the $5.00 co-payment. Had Plaintiff availed himself of the sick-call process, he may have received the treatment he sought.

Defendant Rummel cannot be held liable for Plaintiff's failure to follow the established procedure for receiving medical treatment for his foot.

Finally, Plaintiff cannot state an Eighth Amendment claim against the supervisory Defendants, namely, Tidwell, Haas, Burch, Tifft, and McNeil, in the absence of unconstitutional conduct by their subordinates. Therefore, dismissal of Plaintiff's Eighth Amendment claim regarding medical treatment for his foot is warranted.

    C.    Retaliation

It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *See* Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592–93, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006). To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See* Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); Cummings v. Harrison, 695 F. Supp. 2d 1263, 1274–75 (N.D. Fla. 2010). A prisoner's filing of a grievance concerning the conditions of his imprisonment is protected speech under the First Amendment. *See* Douglas, 535 F.3d at 1321 (quoting Boxer X, 437 F.3d at 1112). As to the second element, the Eleventh Circuit employs a purely objective standard: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1253. In adopting this objective standard, the Eleventh Circuit expressly rejected a subjective "actual chill" standard, that is, a plaintiff suffers adverse action only if the retaliatory conduct actually chilled the exercise of his First Amendment rights. *Id.* at 1250–54. The third element, whether there was a causal connection between the retaliatory acts and the

adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).

The Supreme Court decisions of Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977) and Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) guide analysis of a First Amendment retaliation claim. *See* Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 64 L. Ed. 2d 441 (2006) (citing Mt. Healthy, 429 U.S. at 287; Pickering, 391 U.S. at 566–67); Cummings, 695 F. Supp. 2d at 1274; Pate v. Peel, 256 F. Supp. 2d 1326, 1339 (N.D. Fla. 2003). Although the framework was established in the employment context, it is beneficial to maintain uniformity in these types of cases. Cummings, 695 F. Supp. 2d at 1274–75. The employment four-step analysis is reduced to a three-step analytical framework, but continues to provide a workable standard to guide all retaliation cases. *Id.* at 1275. Initially, the plaintiff must plead and provide sufficient evidence of the retaliatory motive and the adverse action. *See* Hartman, 547 U.S. at 259–60. "[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of . . . ." *Id.* at 260 (citing Mt. Healthy, 429 U.S. at 287). In the context of a defendant's motion for summary judgment, however, the plaintiff has the ultimate burden of proof; therefore, the defendant need only point to evidence as to the legitimate reason, and the plaintiff must produce "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El, 523 U.S. at 600 (citing Liberty Lobby, Inc., 477 U.S. at 256–57).

In the instant case, despite the court's previously advising Plaintiff of this standard and providing Plaintiff an opportunity to produce specific, nonconclusory factual allegations showing that the Defendants' actions were motivated by retaliation, he has failed to so do. He has not pleaded specific facts suggesting any named Defendant took adverse action against him in retaliation for his filing grievances. Therefore, he has failed to state a First Amendment claim of retaliation.

### D. State Law Claims

Finally, to the extent Plaintiff brings state law claims, his claims should be dismissed. It is well established that once Plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against Defendants. *See* Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1569 (11th Cir. 1994); Executive Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett County, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in this case, the court concludes that Plaintiff's state law claims should be dismissed to permit him to pursue them in a more appropriate forum. While it would be convenient for Plaintiff to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Plaintiff's state claims and delaying justice in other cases. Furthermore the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

IV.   CONCLUSION

Based upon the foregoing, the undersigned concludes: (1) Plaintiff's Eighth Amendment claim concerning the deprivation of adequate medical treatment for Hepatitis C should be dismissed without prejudice for failure to exhaust administrative remedies, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); (2) Plaintiff's remaining federal claims should be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and (3) Plaintiff's state law claims should be dismissed to permit him to pursue them in a more appropriate forum.

Accordingly, it is respectfully **RECOMMENDED**:

1.	That Plaintiff's Eighth Amendment claim concerning the deprivation of adequate medical treatment for Hepatitis C be **DISMISSED without prejudice** for failure to exhaust administrative remedies, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

2.	That Plaintiff's remaining claims be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

3.	That Plaintiff's state law claims be **DISMISSED** without prejudice to Plaintiff's right to assert them in state court; and

4.	That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 18th day of August 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**